FONG VENTURE CAPITAL CORP., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fong Venture Capital Corp. v. Commissioner
Docket Nos. 14098-81, 14099-81, 14100-81, 14101-81, 14102-81, 14103-81, 14104-81, 14105-81, 14106-81, 14107-81 14108-81, 14109-81, 14110-81, 14111-81, 14112-81, 14113-81, 21913-81, 21914-81, 21915-81, 21916-81, 5397-83.
United States Tax Court
T.C. Memo 1987-208; 1987 Tax Ct. Memo LEXIS 204; 53 T.C.M. (CCH) 647; T.C.M. (RIA) 87208; April 23, 1987. Edward B. Simpson, for the petitioners. Bryce A. Kranzthor, and Eugene H. Ciranni, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: In these consolidated cases, respondent determined deficiencies in the Federal income taxes of the following petitioners: CORPORATE
INDIVIDUAL
PETITIONER
PETITIONER
Farmers Market of Northern
Walter and Yee Shee Fong
California, Inc.
Farmers Market No. 5, Inc.
Franklin Fong
Farmers Market of South
Stanley L. and Peggy Fong Wong
Sacramento, Inc.
Farmers Enterprises, Inc.
Samuel B. Fong
Farmers Central Market Corp.
Art B. Fong
Farmers General Market Corp.
Art B. and Audrey Fong
Wal Noon Corp.
Sammy G. and Wanda Fong Toy
Fong Venture Capital Corp.
Jerry Fong
*205 After concessions, the issue for decision is whether Farmers Market of Northern California, Inc., Farmers Market No. 5, Inc., and Farmers Market of South Sacramento, Inc., may deduct in 1976 or 1977 as interest, pursuant to section 163, [2] payments to Walter Fong which they accrued in 1976 and made in 1977. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of facts and the attached exhibits are incorporated by this reference. Walter Fong (Fong), an immigrant from China, was the principal founder of a chain of grocery supermarkets which operated under the trade name of "Farmers Markets." Several corporations and partnerships operated the 36 supermarkets in the Farmers Markets chain, including Farmers Markets of Northern California, Inc. (FMNC), which operated stores Nos. 7 and 12, Farmers Market No. 5, Inc. (FM No. 5), which operated stores Nos. 5, 10 and 11, and Farmers Markets of South Sacramento, Inc. (FMSS), which operated stores Nos. 3, 6, and 9. Said corporations and partnerships operated the Farmers Markets *206 chain as a single enterprise and maintained a common bank account. Fong made his personal credit available by guaranteeing the obligations of FMNC, FM No. 5, and FMSS. During 1971, Fong became concerned about this potential liability and consulted with Carl Stein, an attorney who practiced law in California and performed general legal services for Farmers Markets and Fong. Stein sent to Fong a letter which stated, inter alia, the following: Pursuant to your request, I have been investigating the actions whereby Farmco Stores have filed Chapter XI Bankruptcy proceedings. While investigating the rights that you might have personally in the bankruptcy, I had the occasion to note that you had personally guaranteed many of the obligations of Farmco Stores. As a result of this information, I took the liberty of checking the records with your office staff and have noted that you have on numerous occasions acted as a personal gu[a]rantor for obligations of certain corporations operating supermarkets. Specifically, Farmers Market in South Sacramento, Farmers Market of Northern California, Inc. and Farmers Market No. 5, Inc. as well as some of the other corporations. Since your [sic] *207 are the majority shareholder of some of the corporations, you have certain controls over it and although you are subjecting yourself to an immense personal liability by acting as guarantor, you are also in the position to protect your position where you have complete ownership or high majority ownership of the corporation. Even in these cases one of the prime advantages of corporate operations, specifically the limited liability imposed upon you individually is being compromised. However, in the main stores, Farmers of North Sacramento, Farmers of South Sacramento, and Farmers Market No. 5, your ownership appears to be in the range of approximately thirty percent and you again are acting as guarantor for liability with the suppliers of produce, meat, milk as well as equipment loans. Again, I must state that your liabilities as guarantor are extremely high if something were to happen to the corporation and under the stock ownership of the corporations you are merely a minority shareholder who does not have sufficient control over the corporations to dictate management policies. You are therefore subjecting yourself to an extreme liability which as a result of some business reversals *208 would result in you being responsible for the losses. I think that it is imperative for you to re-evaluate your situation because you are depriving your family of all the efforts that you have expended in developing a strong personal financial position for the sake of others which would deprive your family of a potential solid bases of the future or upon your demise could cause your estate to be responsible for the obligations owing and your family receive nothing. On September 28, 1971, the board of directors of FMNC, FM No. 5, and FMSS held a special meeting. The minutes of said meetings were identical and stated, inter alia, the following: All officers and directors of the corporation were present. MR. FONG indicated that he, at the advice of counsel, and his personal CPA, would no longer guarantee any of the obligations for the corporation since he was a minority shareholder and presented copies of the letters from counsel and his personal CPA to the board. He thereupon relinquished this chairmanship and refused to participate in the discussions that ensued. At each of the special meetings, the following resolution was adopted: WHEREAS, the corporation will not without *209 the personal guarantee of Walter Fong be able to obtain the credit from the major suppliers including but not limited to Market Wholesale, Armour and Co., Crystal Creamery, etc., and WHEREAS, Mr. Fong has indicated that he intends to no longer personally guarantee the obligations of the corporation in order to protect his personal financial position, and also to protect his family if something were to happen to him, and WHEREAS, it is acknowledged by the board that without the personal guarantees of Mr. Fong, credit would cease and the corporation's entire existence might be in jeopardy, and WHEREAS, it might be beneficial to the corporation to compensate Mr. Fong for the risks that he is taking in guaranteeing the liabilities and obligations of the corporations, NOW, THEREFORE, BE IT RESOLVED, that the corporation through its officers shall contact D. Herbert Gray, C.P.A., to determine the feasibility, if any, of compensating Mr. Fong for guaranteeing the obligations of the corporation, and he is hereby further directed to determine reasonable rates of compensation and schedule the obligations personally guaranteed by Mr. Fong. On February 18, 1972, the board of directors *210 of FMSS held another special meeting. The minutes from said meeting stated, inter alia, the following: The Chairman announced that the principal item of business to be considered by the directors is the compensation to be paid WALTER FONG in consideration of his guarantee of certain corporate obligations pursuant to the resolutions of the Board of Director's meetings on September 28, 1971, and October 6, 1971. WALTER FONG refused to participate in the discussion that ensued with regard to this item of business. Upon motion duly made, seconded and carried, it was RESOLVED, that the corporation pay to Walter FONG the sum of $394,475.47 as compensation for MR. FONG'S guarantee of corporate obligations as described in the minutes of the Board of Directors dated September 28, 1971, and October 6, 1971. Said sum is to be paid to WALTER FONG at a time to be determined be [sic] consultations between WALTER FONG and this Board of Directors acting in consultation with its accountant regarding its financial convenience in making said payments. The time of payment does not diminish this corporation's ultimate obligation to make the said payment. On March 7, 1972, the board of directors *211 of FMNC and FM No. 5 each held a special meeting and passed a motion, the terms of which were identical to those of the FMSS resolution except that FMNC and FM No. 5 were to pay Fong $499,835.80 and $343,470.15, respectively. Herbert Gray (Gray), a Certified Public Accountant, performed the accounting work for the Farmers Markets chain from 1960 through 1972 and functioned as the chief financial officer and controller from 1972 through 1977. Fong invited Gray to the Farmers Markets corporations' board of directors meetings when the board had a financial question or problem. Gray attended three to five board of directors meetings per year during the period 1973 through 1977. During the years 1973 through 1977, Fong wanted the Farmers Market chain to pay him the guarantee fees which they owed him. Fong discussed this desire with Gray, but Gray always advised Fong that the corporations were not financially strong enough to pay these fees. FMNC, FM No. 5 and FMSS accrued and deducted interest in 1976 on the guarantee fees for their fiscal years ending as follows: Farmers Market of Northern California, Inc.
Accrued March 31, 1976
4/1/72 thru 3/31/73
$499,835.80 X 9%
$ 44,985.24
4/1/73 thru 3/31/74
499,835.80 X 9%
44,985.24
4/1/74 thru 3/31/75
499,835.80 X 9%
44,985.24
4/1/75 thru 3/31/76
499,835.80 X 9%
44,985.24
$179,940.96
Farmers Market No. 5, Inc.
Accrued March 31, 1976
4/1/72 thru 3/31/73
$343,470.15 X 9%
$ 30,912.30
4/1/73 thru 3/31/74
343,470.15 X 9%
30,912.30
4/1/74 thru 3/31/75
343,470.15 X 9%
30,912.30
4/1/75 thru 3/31/76
343,470.15 X 9%
30,912.30
$123,649.20
Farmers Market of South Sacramento Inc.
Accrued Feb. 28, 1976
3/1/72 thru 2/29/73
$394,475.47 X 9%
$ 35,498.25
3/1/73 thru 2/29/74
394,475.47 X 9%
35,498.25
3/1/74 thru 2/29/75
394,475.47 X 9%
35,498.25
3/1/75 thru 2/29/76
394,475.47 X 9%
35,498.25
$141,993.00
*212 Gray did not attend a FMNC, FM No. 5, or FMSS board of director's meeting during which the accrual of interest on the guarantee fees was discussed. Gray did not receive a written statement from the board of directors of FMNC, FM No. 5, or FMSS regarding the accrual of interest on the guarantee fees. The corporate minutes of FMNC, FM No. 5, and FMSS do not mention the interest accruals. In February 1977, the Farmers Markets chain sold all of its assets. FMNC, FM No. 5 and FMSS paid Fong $179,941, $123,649, and $141,993, respectively, and Fong reported said amounts as interest income on his 1977 joint Federal individual income tax return. OPINION Section 163(a) provides that one may deduct interest paid or accrued within a taxable year on indebtedness. We have defined "indebtedness" as "an existing, unconditional, and legally enforcible obligation for the payment of money." Kovtun v. Commissioner,54 T.C. 331, 338 (1970), affd. per curiam 448 F.2d 1268 (9th Cir. 1971), cert. denied 405 U.S. 1016 (1972). One may not accrue interest if a *213 valid obligation to pay interest does not exist. D. Loveman & Son Export Corp. v. Commissioner,34 T.C. 776, 805, 806 (1960), affd. 296 F.2d 732 (6th Cir. 1961). Respondent contends that (1) the guarantee fees were not valid indebtedness, i.e., they were contingent, until the time that it was financially convenient for Farmers Markets to pay Fong the guarantee fees and (2) no obligation to pay interest ever existed. Petitioners contend that the indebtedness was not contingent and that the phrase "financial convenience," which the board of directors' resolution mentions, refers to the time of payment, not the ultimate obligation to make said payment. Petitioners further contend that a valid obligation to pay interest existed. We will address first the issue of whether a valid obligation to pay interest existed. In the instant case, FMNC's, FM No. 5's, and FMNS' corporate minutes and board of directors' resolutions provided that their respective stores were to pay Fong a guarantee fee upon their "financial convenience." [3] Said minutes and resolutions, however, do not provide for the accrual or payment of interest. [4] Gray functioned as the Farmers *214 Markets chain's chief financial officer and controller and attended several board of directors meetings per year during which the board of directors discussed financial questions or problems. The board of directors never discussed the accrual of interest on Fong's guarantee fees during a meeting which Gray attended. Gray never received a written statement from the board of directors regarding the accrual of interest on Fong's fees. FMNC, FM No. 5, and FMSS accrued interest in 1976 in the amounts of $179,941, $123,649, and $141,993, respectively, representing accruals for four years. We believe that the board of directors would have consulted with Gray before they authorized the accrual/payment of such large sums. We further believe that, at the very least, the board of directors would have apprised Gray of such action in writing. Accordingly, we find that the corporations were not obligated to pay interest on Fong's guarantee fees. See D. Loveman & Son Export Corp. v. Commissioner,supra.
*215 Petitioners contend that Gray's testimony indicates that the board of directors authorized the accrual/payment of interest and that Fong informed Gray of such approval. [5] Respondent contends that Gray's testimony is hearsay. [6] Petitioners contend that Gray's testimony falls within a hearsay exception. [7]
*216 Assuming arguendo that Gray's testimony falls within rule 804(b)(5), this testimony, by itself, would not persuade us. The corporate minutes and board resolutions are devoid of any reference to the accrual/payment of interest. Gray, who functioned as the corporations' chief financial officer and controller, was not consulted about, or apprised of, the alleged board authorization to accrue/pay interest to Fong. This evidence and the inferences therefrom convince us that the corporations were not obligated to pay any interest to Fong. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Wal Noon Corporation, docket No. 14099-81; Farmers Central Market Corporation, docket No. 14100-81; Farmers Enterprises, Inc., docket No. 14101-81; Farmers Market of South Sacramento, Inc., docket No. 14102-81; Farmers Market No. 5, Inc., docket No. 14103-81; Farmers Market of Northern California, Inc., docket No. 14104-81; Walter Fong and Yee Shee Fong, docket No. 14105-81; Walter Fong and Yee Shee Fong, docket No. 14106-81; Franklin Fong, docket No. 14107-81; Stanley L. Wong and Peggy Fong Wong, docket No. 14108-81; Samuel B. Fong, docket No. 14109-81; Art B. Fong and Audrey Fong, docket No. 14110-81; Art B. Fong, docket No. 14111-81; Sammy G. Toy and Wanda Toy, docket No. 14112-81; Jerry Fong, docket No. 14113-81; Farmers Market No. 5, Inc., docket No. 21913-81; Farmers Market South Sacramento, Inc., docket No. 21914-81; Mun Li Fong, docket No. 21915-81; Farmers Market of Northern California, Inc., docket No. 21916-81; Walter S. Fong and Yee Shee Fong, docket No. 5397-83.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
3. On cross examination, Gray opined that the phrase "financial convenience" meant the time at which the corporations were financially able to pay without damaging their operations. ↩
4. At trial, petitioners' counsel stated "Well, unfortunately, there are no minutes relating to the interest accrual * * *."↩
5. Fong was unavailable to testify because he had suffered a cerebral hemorrhage. ↩
6. Rule 801(c), Federal Rules of Evidence provides: (c) Hearsay. -- "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. ↩
7. Petitioners contend that the hearsay exception is rule 804, Federal Rules of Evidence, which provides in part: Rule 804. Hearsay Exceptions; Declarant Unavailable (a) Definition of unavailability. -- "Unavailability as a witness" includes situations in which the declarant -- * * * (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; * * * (b) Hearsay exceptions. -- The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * (5) Other exceptions. -- A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.↩